(C. D. 1522)

YARDLEY OF LONDON, INC. C. J. TOWER & SONS } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 29, 1953)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiffs.
*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale* and *Dorothy C. Bennett*, special attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on merchandise described as "Cremba Absorption Base" at the rate of 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as a nonenumerated manufactured article. It is claimed that the merchandise is entitled to free entry under paragraph 1796 as wax, animal, vegetable, or mineral, not specially provided for, or under paragraph 1733 as a mineral oil, paraffin, or paraffin oil, not specially provided for. The merchandise was also subjected to a tax under section 2491 (c) of the Internal Revenue Code and the containers (drums) were assessed with duty under paragraph 328 of the Tariff Act of 1930. The latter items are not involved herein.

The pertinent provisions of the tariff act are as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1796. Wax: Animal, vegetable, or mineral, not specially provided for. [Free.]

PAR. 1733. Oils, mineral: Petroleum, crude, fuel, or refined, and all distillates obtained from petroleum, including kerosene, benzine, naphtha, gasoline, paraffin, and paraffin oil, not specially provided for. [Free.]

At the trial, plaintiffs introduced into evidence report No. D 15376 of the United States Customs Laboratory, dated October 9, 1947, and signed by H. W. Eckweiler, assistant chief chemist, and by H. R. Garbutt. According to this report, the sample of Cremba absorption base submitted to the laboratory is a mixture of mineral wax and about 16 per centum wool wax.

Plaintiffs called George Finkenstadt, assistant works manager in charge of manufacturing of Yardley of London, Inc., the importer herein. He testified that he is familiar with the instant merchandise and is in charge of processing it. The article itself is not further processed but is used as a component material of each of two cosmetic items, a night cream and a makeup base. The night cream consists of the imported material and paraffin, petroleum, mineral oil, an emulsifying agent—usually borax—water, perfume, and oil. The makeup base consists of the imported article and petroleum jelly, oxides, coloring matter, and perfume oil. The witness added that this merchandise is purchased by the London office and is analyzed there. It is used here in the manufacture of cosmetics in accordance with complete set formulas provided by the London office.

Defendant called Helen R. Garbutt, a chemist who has been employed by the United States Customs Laboratory for 9 years. She testified that she received a sample of the involved merchandise in the regular course of official business and made two analyses thereof. The first was made by the usual fat analysis, saponification, and determination of hydroxyl value, and resulted in the report heretofore mentioned. Subsequently, new methods were introduced into the laboratory, and the witness realized that by using them she could make a better separation of the product. Therefore, a second analysis and report were made in April 1950. The report, dated April 5, 1950, amends report No. D 15376 and states that the sample is a mixture of about 36 per centum paraffin, 17 per centum wool grease, and 47 per centum mineral oil. The witness stated that the product had not changed chemically or physically during the period between the two analyses.

Miss Garbutt testified that the second analysis was made by using first a procedure described under petroleum products by the American Society for Testing Materials. This separated the material into an oily fraction and a waxy material that proved to be paraffin. Then, the oily fraction was separated by chromatographic analysis into mineral oil and wool grease.

The remainder of the sample used by Miss Garbutt in making the analyses was introduced into evidence and she described it as a soft

grease with the odor of wool grease. It appears to be a yellow greasy material of the consistency of cosmetic creams with an unpleasant odor. To illustrate its absorption capacity, Miss Garbutt placed a portion in a glass beaker and mixed it with water. She stated that it would absorb an amount of water approximately 7 times its own weight and would emulsify. For that reason, it was not, in her opinion, solely a wax, or a paraffin, or a paraffin oil, or a mixture of paraffin and mineral oil. It emulsifies, or mixes with water, because of the presence of wool grease, she said.

On cross-examination, it was brought out that in 1947 Miss Garbutt believed the product to be wool wax and mineral wax and considered her first analysis sufficient. She said that an experienced chemist would not have been able to detect the presence of mineral oil by visual examination as it was not too simple to determine that. She added that the method she employed later was not in common use in the laboratory in 1947.

The witness testified that the 84 per centum mineral wax referred to in the first report did not disappear but was divided into paraffin (a mineral wax) and mineral oil. In 1947, she considered 16 per centum to be wool wax, but now regarded it as wool grease because she had been able to separate it. She did not agree with a definition read to her by plaintiffs' counsel to the effect that refined wool grease is correctly termed wool wax. She stated that the alcohols of wool grease were considered to be wool wax and that some of those exist in the imported merchandise, indicating that there may be some wool wax in it.

The question before the court is whether the imported merchandise is wax under paragraph 1796, or any of the mineral oils or paraffin enumerated in paragraph 1733, or a manufactured article, not specially provided for, dutiable under paragraph 1558. Plaintiffs rely upon the first laboratory analysis which stated that the article was a mixture of mineral wax and wool wax. However, a subsequent analysis of the same material indicates that the merchandise is more than wax but is a combination of paraffin (mineral wax), mineral oil, wool grease, and possibly some wool wax. The second analysis was made by methods which the witness, an experienced chemist, stated enabled her to make a more complete separation of the product. The record indicates that the new methods were an improvement upon and produced more accurate results than the old ones. Neither the technique nor the methods used in the second analysis have been impeached. It is clear that that analysis enabled the witness to make a more complete and accurate identification of the product here involved.

On the record herein, we hold that the instant merchandise, a mixture of paraffin, wool grease, and mineral oil, is more than a wax, as provided for in paragraph 1796 of the Tariff Act of 1930, and more than a paraffin or a mineral oil, as provided for in paragraph 1733.

Since it is not specially provided for and is a manufactured article, it is properly dutiable as classified by the collector at 20 per centum ad valorem under paragraph 1558 as a nonenumerated manufactured article. The protest is overruled and judgment will be rendered for the defendant.